IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO: 6:25-CV-00336 |
| | § | |
| 5,238,117.3291 USDT | § | |
| Defendant. | § | |

## AFFIDAVIT IN SUPPORT OF COMPLAINT FOR FORFEITURE

I, Brad Schley, after being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.       I am a Special Agent with the United States Secret Service (USSS) and have been so employed since September 2001.  My current position is the Resident Agent in Charge (RAIC) of the USSS Tyler Resident Office.  During my tenure with the Secret Service, I have been assigned to investigate violations of federal laws, including violations of Title 18 of the United States Code, specifically those related to the passing of counterfeit United States currency, money laundering, and wire fraud.  I received criminal investigative training at the Federal Law Enforcement Training Center in Glynco, Georgia, and at the James J. Rowley Secret Service Training Center in Beltsville, Maryland, pertaining to criminal investigations of counterfeit currency, bank fraud, money laundering, wire fraud, access device fraud, and identity theft.  During my employment with the USSS, I have conducted investigations resulting in the arrest of

suspects and seizures of criminally derived property.  I am an investigative and law enforcement officer of the United States, in that I am empowered by law to conduct investigations and to make arrests for felony offenses, under authority of 18 U.S.C. § 3056.

2.      The statements contained in this affidavit are based in part upon my experience, my knowledge of the facts and circumstances surrounding this investigation, and on information provided to me by other law enforcement personnel and other witnesses.

## PROPERTY FOR FORFEITURE

3.      This Affidavit is made in support of a civil forfeiture complaint concerning the following personal property:

a.      5,238,117.3291 USDT that was seized on or about December 17, 2024, in Tyler, Texas via seizure warrant 6:24-MJ-286 from Tether deposit addresses 0x95aC3e931986a3207C494c54683ba83b614d456d, TQvtEH4cPSXD4JBfGBE8FYEzT8Mj3ZR1LH, and TXVwEiqwEqMQVMa6yFc5k3kgePsC3MW1Cu.

## LEGAL AUTHORITY FOR FORFEITURE

3.      The funds to be forfeited represent proceeds of multiple business email compromise fraud schemes.  A business email compromise (BEC) fraud scheme usually involves businesses or organizations that utilize a large amount of wire transfers during

**Affidavit – Page 2**

the normal course of their business.  Generally, the victims report to be contacted via email by unknown subjects who were believed to be trusted business partners. Eventually, the conversation between the victim and the unknown subjects shifts from changing current payment protocols to different bank accounts.  The victim believes they made their proper payments for goods and services. In reality, the funds are laundered through a series of money mule accounts.  Eventually, the victim learns of the fraud scheme when they do not receive the various goods or services, or are contacted by the legitimate intended payee who advises they did not receive payment.  These funds are then laundered through various bank accounts which eventually gets converted to cryptocurrency through U.S.-based and other exchanges.

4.      I believe the above-listed property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) because the property was involved in or traceable to property involved in money laundering in violation of 18 U.S.C §§ 1956 or 1957, or constitutes proceeds from a specified unlawful activity (as defined in 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1)).

5.      Any property, real or personal, which was involved in a transaction in violation of 18 U.S.C. §§ 1956 or 1957 or any property traceable to such property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

6.      18 U.S.C. § 1956(a)(1) makes it a crime to knowingly conduct or attempt to conduct a "financial transaction" with proceeds from "specified unlawful activity" (SUA)

**Affidavit – Page 3**

with specific intent to: promote the SUA, conceal or disguise the source, origin, nature, ownership, or control of the proceeds; or evade reporting requirements.

7.      The purpose of "money laundering" as defined by 18 U.S.C. § 1956 is to disguise illicit nature of funds by introducing it into legitimate commerce and finance thereby making them "clean."  This financial process is most commonly conducted using three steps referred to as "placement," "layering," and "integration."  Typically, the "placement" phase of this financial process takes place when proceeds from illicit sources are placed in a financial institution or business entity.  "Layering" takes place when these funds are then used in seemingly legitimate commerce transactions which makes the tracing of these monies more difficult and removed from the criminal activity from which they are a source.  Finally, the "integration" phase is when these funds are then used to promote the unlawful activity or for the personal benefit of the money launderers and others.

8.      I also have probable cause to believe that this property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) because the property constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343 or a conspiracy to commit such offense (18 U.S.C. § 1349).  Wire fraud is an SUA.

9.      Any property, real or personal, which constitutes proceeds or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343 or 1349 is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**Affidavit – Page 4**

10.    Under 18 U.S.C. § 984, for any forfeiture action in rem in which the subject property consists of cash, monetary instruments in bearer form, or funds deposited in an account in a financial institution:

    a.    The government need not identify the specific funds involved in the offense that serves as the basis for the forfeiture;

    b.    It is not a defense that those funds have been removed and replaced by other funds; and

    c.    Identical funds found in the same account as those involved in the offense serving as the basis for the forfeiture are subject to forfeiture.

11.    In essence, 18 U.S.C. § 984 allows the government to seize for forfeiture identical property found in the same place where the "guilty" property had been kept.

## FACTS SUPPORTING FORFEITURE

12.    The United States is investigating a business email compromise fraud scheme involving victims located within the Eastern District of Texas and elsewhere. The investigation concerns possible violations of, inter alia, 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) and 18 U.S.C. §§ 1956 and 1957 (Laundering of Monetary Instruments).

13.    This investigation revealed that the Tether deposit addresses of 0x95aC3e931986a3207C494c54683ba83b614d456d (TARGET PROPERTY 1);

**Affidavit – Page 5**

TQvtEH4cPSXD4JBfGBE8FYEzT8Mj3ZR1LH (TARGET PROPERTY 2); AND

TXVwEiqwEqMQVMa6yFc5k3kgePsC3MW1Cu (TARGET PROPERTY 3) received

proceeds from various methods of wire fraud schemes within the United States.

14.     Specifically, in August 2024, the USSS Tyler Resident Office began an

investigation of a criminal money laundering syndicate operating business email

compromise scams.  This investigation has discovered that once the victims send their

funds to a domestic bank account, the funds are laundered through additional domestic

accounts and are eventually sent to a cryptocurrency exhange where the fiat currency is

exchanged for cryptocurrency.

15.     Once the cryptocurrency is initially purchased, it is further laundered

through a series of transactions and conversions in an attempt to obsfucate the original

source of the funds.  Law enforcement personnel in the USSS Tyler Resident Office have

worked with cryptocurrency exchanges to identify the account holders receiving these

proceeds and further trace the proceeds to addtional cryptocurrency deposit addresses.

16.     This investigation was initiated when the affiant was notified by a Texas

Bank and Trust[1] (TB&T) bank employee, that a TB&T customer sustained a loss of

approximately $600,000 when the business customer reported to be a victim of a BEC

fraud scheme.

---

[1] Texas Bank and Trust is a financial institution headquartered in Longview, Texas, within the Eastern
District of Texas.

**Affidavit – Page 6**

17.    Specifically, the victim identified as Lapetco, Inc., was involved in a legitimate business transaction with Pontem Energy Partners, LP and discussed the business transaction via email with an attorney.  In fact, as part of this deal Lapetco, Inc conducted two successful transactions for this business transaction.

18.    However, on or about July 31, 2024, the parties involved in the transaction who represented Lapetco, Inc and Pontem Energy Partners received an email from someone who mimicked the legitimate attorney's email address domain, @rfhfirm.com, by adding an "l" between the f and h, @rflhfirm.com.  This new email advised the group that the wire/payment information for the transaction has changed and updated bank information would be provided.

19.    The new bank information was sent by a mimicked email and advised the funds for this business transaciton should be sent to the Citizens Bank account number 6318290242 in the name of Pontem Energy Partners LP.

20.    On or about July 31, 2024, Lapetco employees followed the newly received instructions and sent approximately $600,000 from their TB&T account to the Citizens Bank account number 6318290242 in the name of Pontem Energy Partners LP.

21.    On or about August 2, 2024, Lapetco employees were notified by the intended business partner that they have not received the $600,000 for their business transaction.  As a result, the fraudulent nature of the emails were discovered and was reported to the Addison Police Department under report number 24-8302.

**Affidavit – Page 7**

## PROCEEDS OF THIS BEC ARE LAUNDERED THROUGH DOMESTIC ACCOUNTS

22.     On or about August 5, 2024, a Citizens Bank employee notified the affiant that the funds in the Citizens Bank account ending in 0242 were dispersed to the Truist Bank account in the name of The Haggard LLC, account number 1340026296187 and to the First Horizon Bank account in the name of The Haggard Firm LLC, account number 220007264544.

23.     The Citizens Bank records pertaining to account ending in 0242 reflect the account is actually styled in the name of David Kemper LLC and not Pontem Energy Partners LP.  The records pertaining to Citizens Bank account 0242 confirm the deposit of $600,000 from Lapetco that was reported above, as well as an additional deposit of $546,215.18 on August 1, 2024, from a person identified as JP.

**BEC Victim JP**

24.     USSS investigators contacted JP who reported that the deposit made to the Citizens Bank account 0242 stemmed from a real estate transaction wherein she was attempting to purchase real estate.  JP reported that during the various emails relating to her real estate closing transaction, an unknown person who represented to be a person involved with the real estate transaction, provided the bank account information for Citizens Bank account 0242 via email.  JP stated the email identified account 0242 as the account that could receive her payment for the property she intended to purchase. However, JP reported it was later discovered they were victims of a BEC fraud scheme

**Affidavit – Page 8**

and were not able to recover their funds.  JP reported the loss caused significant hardship for her family.

25.    Continuing on August 5, 2024, the affiant contacted a Truist Bank employee regarding account ending in 6187 and advised the Truist Bank employee the funds sent to the identified account were derivived from BEC fraud schemes.  The Truist bank employee advised that approximately $251,000 remained in the account ending in 6187.  However, the remaining funds, $247,455.00, were sent to Kraken, a domestic cryptocurrency exchange, to the credit of Kraken account AA04 NB4G U4Z6 WNFI.

26.    Also on August 5, 2024, the affiant contacted an employee at First Horizon Bank (FHB) regarding the bank account ending in 4544.  The FHB employee informed the affiant that in addition to the funds from Citizens Bank, the FHB account in the name of The Haggard LLC, account ending in 4544 also received an ACH deposit of $1,408,850.00 that was also reported by the sending bank/victim to be the proceeds of a BEC.[2]  The FHB employee also stated the funds in account ending in 4544 were depleted by transactions also sent to Kraken account AA04 NB4G U4Z6 WNFI.

27.    USSS investigators reviewed the FHB records pertaining to account 4544 and confirmed the transactions from the Citizens Bank account 0242.  Specifically, on August 2, 2024, FHB account 4544 received two (2) wire transactions in the amount of

---

[2] The victim of this BEC filed a report with the Internet Crime Complaint Center, IC3.gov.

$250,000 each, totaling $500,000. The records indicate these funds were quickly moved on the same date to Kraken via two (2) wire transactions, $249,500 and $249,678.

## PROCEEDS IN KRAKEN ACCOUNT WNFI ARE CONVERTED TO CRYPTOCURRENCY

28.    Records pertaining to Kraken account AA04 NB4G U4Z6 WNFI (WNFI) were obtained by USSS TFO John Partlow via subpoena. The records indicate the Kraken account was opened on or about January 27, 2024, and held in the name of The Haggard LLC with signor Dustin Wetor. The account opening records included a photograph of a state of Wisconsin Driver's License bearing the name Dustin Wetor; indexed under number W360-1648-5285-02; date of birth August 5, 1985 and address W6913 State Road 28, Cascade, Wisconsin 53011. Also included was a selfie of Wetor whose image matched that contained on the driver's license. NLETS database queries indicate the information contained on the driver's license was genuine, however, the image of the individual on this driver's license is actually Daniel Lee Sallay, whose booking photo matches the photo on this driver's license.[3] Account opening documents obtained from Kraken also indicate that The Haggard LLC "specializes in commercial and residential rehabs and renovation."

29.    USSS investigators analyzed the transactions and determined the Kraken account styled in the name of The Haggard LLC converted the fiat currency to USDT and

---

[3] Sallay was arrested on July 18, 2024 in Nashville, Tennessee upon his attempt to open a bank account utilizing a fake identification.

then conducted several transactions that resulted in approximately 2,232,509.00 USDT

being sent to an unhosted wallet address,

0x95aC3e931986a3207C494c54683ba83b614d456d which is TARGET PROPERTY 1.

Specifically, these transactions occurred from July 4, 2024, through August 2, 2024, and

are identified in the below table:

| DATE OF TRANSACTION | TRANSACTION HASH |
|---|---|
| July 4, 2024 | 0x64966b70b2cbeebf9da2d60f7e8cdc6a368aec91d6f8a76f337acfe09f55db52 |
| July 7, 2024 | 0xc0ac9c1f913fb712ff3da8dc5f687e4ecc35def8acef0976bf977f107b4c3171 |
| July 7, 2024 | 0xb5e4b123fa8432ddd228944c57aa1dd6587ae33f612c553be819100c04a3e8a8 |
| July 8, 2024 | 0x3271fb95b7b67d2b93a9520e84899efd39c57a189935ea3297ac697c321599fc |
| August 2, 2024 | 0x3b6ee372faddac706ade7da932f76f5773498723ca67c38c0d0f9dddd5721d24 |
| August 2, 2024 | 0xee640d3051fd38e9125210643cf2af48a4a28f38b862c9aa1833e4bd23130dcb |

30.      As a result of these transactions, TFO Partlow served Kraken with an

additional subpoena to identify any additional Kraken accounts that are also sending

funds to TARGET PROPERTY 1.  The respective records were received from Kraken

and indicate that Kraken account number AA74 N84G 7KK7 RL6A was opened on or

about July 16, 2024, using the business name Arkan Early Childhood Association LLC,

with signor using the name Jennifer L. Fafard.  The records also included a state of

Tennessee driver's license, bearing the information for Jennifer L. Fafard, ID number

102603621, with date of birth December 8, 1984.  The individual photographed on this

identification is a black female with brown eyes and black hair.

31.      USSS personnel conducted NLETS queries regarding the aforementioned

Tennesse driver's license in the name of Fafard.  The inquiries reveal the information

contained on the driver's license is legitimate, however, the information belongs to Jennifer L. Fafard, who is a white female, with black hair and brown eyes.  This information strongly suggests the Kraken account AA74 N84G 7KK7 RL6A (RL6A) was established using a false identification document, which is the same method used by the suspects who established the Kraken account in the name of The Haggard LLC.  The funds deposited into Kraken RL6A were derived from a BMO Harris Bank account discussed later in this affidavit.

32.    The transaction records for Kraken account RL6A identify seven (7) transactions that were made to TARGET PROPERTY 1 totaling approximately 3,482,000 USDT during the time period between October 17 and 25, 2024.

33.    Additionally, the transaction records for Kraken account RL6A identified multiple transactions to other identified unhosted wallet addresses.  Specifically, during the time period between October 29 and November 4, 2024, there were four (4) transactions that were sent from Kraken account RL6A to unhosted wallet address TRtvf3k3VrhyjkxrjY83BnWeUdvjAyNh6C (Nh6C) totaling approximately 1,978,000 USDT.  Furthermore, during the time period between November 5 and 13, 2024, there were six (6) transactions that were sent from Kraken account RL6A to unhosted wallet address TXpX7er55u6QoyM7RRTuLggm8W76gZ9iSa (9iSa) totaling approximately 2,487,300 USDT.

**Affidavit – Page 12**

34.    USSS personnel who are trained and experienced in blockchain tracing, utilized blockchain analysis tools to review the transactions regarding the identified unhosted wallet addresses above, Nh6C and 9iSa.  This analysis easily showed that funds from these two addresses were sent directly to TARGET PROPERTY 2 and TARGET PROPERTY 3.

35.    Specifically, the transactions from unhosted wallet address Nh6C to TARGET PROPERTY 2 were sent on October 31, 2024 and November 4, 2024, in the amounts of 496,000 USDT and 493,000 USDT respectively.  Also, funds from Nh6C were sent to TARGET PROPERTY 3 on October 30, 2024, in the amount of 498,000 USDT.

36.    Similarly, unhosted wallet address 9iSa also sent to TARGET PROPERTY 2 on three (3) occasions, to include November 7, 2024 (498,000 USDT); November 12, 2024 (494,100 USDT); and on November 13, 2024 (495,300 USDT).  Unhosted wallet address 9iSa also sent to TARGET PROPERTY 3 on November 6, 2024, in the amount of 496,000 USDT.

37.    In sum, TARGET PROPERTY 2 received a total of approximately 2,476,400 USDT from wallets 9iSa and Nh6C combined.  This total equates to 99.99% of the entire funds TARGET PROPERTY 2 received.

38.    TARGET PROPERTY 3 received a total of approximately 994,000 USDT from wallets 9iSa and Nh6C combined.  These are the only transactions TARGET PROPERTY 3 received.

39.    According to the Kraken records for account RL6A, the funds sourcing these transactions were deposited into the account via wire transactions from BMO Harris bank, account number 4845485559.

## VICTIM OF BEC FRAUD SCHEME IDENTIFIED

40.    USSS TFO Partlow served a subpoena to BMO Harris Bank regarding account ending in 5559.  USSS personnel contacted BMO Harris bank employees and were informed that account 5559 was styled in the name of Arkan Early Childhood Association and received deposits from a BOK Financial Bank account styled in the name of Proline Products, who reported that it was a recent victim of a BEC fraud scheme.

41.    USSS personnel interviewed BE, an employee of Proline Products, regarding the BEC fraud scheme.  BE stated that Proline Products is a bottled water distribution company located in Dallas, Texas and they have several customers to include Niagra Bottling located in California.  BE stated that during the course of business with Niagra Bottling, they received an email from an unknown subject who used the email domain @naigarawater.com, which was a misspelling of the company's name.  It was

during these email exchanges with this unknown person that new payment instructions containing the BMO Harris account 5559 were provided to Proline Products.

42.    BE stated Proline Products issued multiple large payments totaling approximately $9.5M to the BMO Harris account ending in 5559, to include:

| DATE | AMOUNT |
|---|---|
| October 15, 2024 | $2,426,174.90 |
| October 21, 2024 | $1,973,713.58 |
| October 28, 2024 | $1,432,251.98 |
| November 4, 2024 | $2,193,347.61 |
| November 12, 2024 | $1,482,225.77 |

43.    BE stated the fraud was recently discovered when the Niagra Bottling inquired about the unpaid invoices regarding their business with Proline Products.  BE provided the USSS with copies of the IC3 report and the report made to the Dallas Police Department referenced under case number 172798-2024.

**TARGET PROPERTY 1, 2, and 3**

44.    Using Blockchain Analytics, TARGET PROPERTY 1, 2 and 3 were identified as unhosted wallets containing USDT derived from the aforementioned BEC fraud schemes.  As a result, USSS investigators contacted Tether and requested TARGET PROPERTY 1, 2 and 3 be frozen.  Tether voluntarily complied with this request, and confirmed TARGET PROPERTY 1 contains approximately 3,249,104 USDT; TARGET PROPERTY 2 contains approximately 1,782,930 USDT; and TARGET PROPERTY 3 contains approximately 206,084 USDT, for a total of 5,238,118 USDT.  As part of the freeze request the USSS provided Tether with an email address where any claimants

**Affidavit – Page 15**

and/or owners of the TARGET PROPERTY 1, 2, and 3 could contact USSS personnel to provide information regarding their wallet addresses.  As of the dates of the freeze requests (October 24, 2024 and December 2, 2024), to the time of this writing, no contact from any claimant(s) has been received by the USSS.

45.    The investigation by the USSS has shown that the full USDT balance in TARGET PROPERTY 1, 2 and 3 were derived from the Kraken accounts RL6A and WNFI, styled in the name of Arkan Early Childhood Association LLC and/or The Haggard LLC.  Finally, the USSS investigation has shown that the Kraken accounts RL6A and WNFI were funded by fraud proceeds of  BEC fraud scheme that victimized Proline Products and Lapetco.  These transactions are also reflected in Exhibit 1, which is attached to this affidavit.

46.    The seizure of the Target Properties included several actions, to include an initial freeze request on October 24, 2024, that was provided to Tether from the USSS regarding TARGET PROPERTY 1.  Next, Tether voluntarily agreed to freeze the funds on October 25, 2024.  At this time, Tether agreed to offer any claimants/owners of the target property a method of contact to the USSS, namely email address tlrinfo@usss.dhs.gov.  This email is accessible by the USSS Tyler Resident Office personnel to communicate in these circumstances and is regularly monitored for messages.  Additionally, a ninety-day waiting period for any claimants to establish contact with Tether or the USSS expired prior to serving a seizure warrant for the Target

Property.  To date, no messages regarding this Target Property have been received, and Tether has not reported contact by any claimant of this Target Property.

47.    Similarly, as the investigation developed, an additional freeze request was provided to Tether for TARGET PROPERTY 2 and 3 on December 2, 2024.  Tether also agreed to freeze the funds held in these two wallet addresses on the same date.  The same process with any claimants for TARGET PROPERTY 1 was followed for TARGET PROPERTY 2 and 3.  To date, no messages regarding TARGET PROPERTY 2 AND 3 have been received, and Tether has not reported contact by any claimant of TARGET PROPERTY 2 or 3.

48.    Further, postings on Twitter were made by Tether regarding TARGET PROPERTIES 1 and 2 being placed on the banned list.  It is reported that Tether's post on X (formerly Twitter) regarding TARGET PROPERTY 1 being blocked on November 11, 2024 was viewed 384 times, and Tether's post on X regarding TARGET PROPERTY 2 being blocked on December 4, 2024, was viewed at least 76 times, but no one has contacted the USSS or Tether regarding TARGET PROPERTY 1 or 2.

49.    Even though no posts on X by Tether were located for TARGET PROPERTY 3, a general Internet query for TARGET PROPERTY 3 indicates a publication on telemetr.io indicates TARGET PROPERTY 3 was placed on the USDT ban list.  Based upon my research of telemetr.io, I know telemetr.io to be an advertising service for Telegram, a communication platform that is used globally.

**Affidavit – Page 17**

50.     Lastly, there is an additional public notice on TRM notice, which identifies all of the TARGET PROPERTIES as blocklisted.  When a wallet address is blocklisted, the wallet address is no longer able to conduct any transactions.

51.     On December 17, 2024, a seizure warrant (6:24-MJ-286) was obtained in the Eastern District of Texas for TARGET PROPERTY 1, 2, and 3 and was served to Tether.

## CONCLUSION

52.     I submit that this affidavit supports probable cause for a warrant to forfeit all funds, monies, and other things of value up to 5,238,117.3291 USDT seized from Tether deposit addresses 0x95aC3e931986a3207C494c54683ba83b614d456d; TQvtEH4cPSXD4JBfGBE8FYEzT8Mj3ZR1LH; and TXVwEiqwEqMQVMa6yFc5k3kgePsC3MW1Cu.

53.     Based on my experience and the information herein, I have probable cause to believe that the seized 5,238,117.3291 USDT constitutes proceeds from a specified unlawful activity (as defined in 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1)), are traceable to a money laundering transaction and are therefore subject to forfeiture pursuant to pursuant to 18 U.S.C. § 981(a)(1)(A).

54.     I also have probable cause to believe that the seized 5,238,117.3291 USDT constitutes proceeds traceable to a violation of 18 U.S.C. § 1343 and/or 18 U.S.C. § 1349, and are therefore is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

As provided in 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.



Brad Schley, Special Agent
U.S. Secret Service

**Affidavit – Page 19**

# EXHIBIT 1

